**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dave Willett, | |
| Plaintiff, | No. CV-15-08103-PCT-PGR |
| vs. | ORDER |
| Arizona Department of Safety Officer Curtis Plumb, #PS5899, et al., | |
| Defendants. | |

Pending before the Court is defendants' Motion to Dismiss (Doc.7)[1], wherein the defendants seek the dismissal of the federal claims against them on the basis of qualified immunity and the state law claim against them on the basis that the plaintiff failed to file the required notice of claim. Having reviewed the parties' memoranda, the Court finds that the motion should be granted.

<u>Background</u>

According to the complaint, the plaintiff was driving a rental car on business on I-40 in Arizona on July 27, 2014 when he was pulled over for speeding by

---

[1] The plaintiff left off two exhibits to his motion when it was filed. Instead of filing a notice of errata, the plaintiff re-filed the motion to dismiss with the inclusion of the two exhibits (Doc. 8). The docket lists the original motion (Doc. 7) as the pending motion, so the Court refers to it by that docket number.

defendant Curtis Plumb, an Arizona Department of Public Safety officer. Plumb, after informing the plaintiff that many drug smugglers drive rental cars, asked the plaintiff for consent to search his car, which the plaintiff denied. Plumb then forced the plaintiff to get out of the car and remain at the scene while waiting for a drug sniffing dog to arrive. The canine unit took seventeen minutes to arrive. The dog circled the car twice before alerting on something. Plumb and co-defendant Gunnar Hancock, another Arizona Department of Public Safety officer, then searched the plaintiff's car and found nothing illegal in it. Only then did Plumb and Hancock allow the plaintiff to leave the scene of the traffic stop. Although it is not absolutely clear from the complaint, the plaintiff was apparently issued a citation for speeding, presumably by Plumb, but no facts are alleged in the complaint establishing at what point during the plaintiff's detention the citation was issued, or what Plumb was doing during the wait for the arrival of the dog, or how long the entire stop took. While the complaint also fails to allege when Hancock appeared at the scene of the traffic stop, the Court presumes for purposes of the motion to dismiss that he was the officer who brought the drug dog to the scene.

The complaint alleges three claims against both defendants: a federal claim pursuant to 42 U.S.C. § 1983 for violating the plaintiff's civil rights under color of state law and subjecting him to unreasonable searches and seizures (Count One); a federal claim alleging a violation of the plaintiff's right under the Fourth and Fourteenth Amendments to be free from searches and seizures without a warrant (Count Two); and a state law claim for false imprisonment (Count Three).[2] The

---

[2] The Court notes that Counts One and Two appear in effect to be the same claim. It also notes, as to Count Two, that the plaintiff cannot bring a claim directly under the Constitution since all federal claims alleging a violation of a constitutional right must be brought pursuant to § 1983. Azul-Pacifico, Inc. v. City

complaint seeks general and punitive damages for the plaintiff's mental injury, mental anguish and emotional losses.

Discussion

    A. Count Three

The defendants have moved to dismiss Count Three, the state law false imprisonment claim, on the ground that the plaintiff failed to comply with the notice of claim requirement of A.R.S. § 12-821.01(A). *See* Salerno v. Espinoza, 115 P.3d 626, 628 (Ariz.App.2005) ("Compliance with the notice provision of § 12-821.01(A) is a 'mandatory' and 'essential' prerequisite to such an action, . . . and a plaintiff's failure to comply 'bars *any* claim.'") (emphasis in original). The Court concludes that Count Three must be dismissed because the complaint fails to allege that the plaintiff filed and served a notice of claim as to either defendant, and because the plaintiff is deemed to have consented to the dismissal of this claim inasmuch as his response to the motion to dismiss totally ignores this issue.[3]

    B. Counts One and Two

The defendants have moved to dismiss Counts One and Two, the federal claims, on the ground that both defendants are entitled to qualified immunity. Public officials, such as the defendants, who are sued pursuant to 42 U.S.C. § 1983 are entitled to qualified immunity unless it is shown that they have "violated a statutory or constitutional right that was clearly established at the time of the challenged

---

of Los Angeles, 973 F.2d 704, 705 (9th Cir.1992) ("Plaintiff has no cause of action under the United States Constitution. We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.")

[3] For this reason, the Court has not considered the two declarations from the defendants regarding the non-service of a notice of claim that were attached as exhibits to the motion to dismiss.

conduct." Reichle v. Howards, __ U.S. __, 132 S.Ct. 2088, 2094 (2012). The purpose of qualified immunity is to give "government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violated the law." Ashcroft v. al-Kidd, __ U.S. __, 131 S.Ct. 2074, 2085 (2011). A two-part test is used to determine whether a public official is entitled to qualified immunity: first, do the facts alleged by the plaintiff show a violation of a constitutional right, and second, was the right clearly established at the time of the alleged misconduct. Carillo v. County of Los Angeles, 798 F.3d 1210, 1218 (9th Cir.2015).

          1. Violation of a constitutional right

The first prong of the qualified immunity test is met if the facts alleged in the complaint, taken in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. Brosseau v. Haugen, 543 U.S. 194, 197 (2004). The Court concludes that the plaintiff has sufficiently met this first prong as to Plumb, albeit fairly marginally so given the relatively spare factual allegations in the complaint, and the defendants do not appear to seriously argue otherwise. While the defendants argue that the complaint's allegations that the continued detention of the plaintiff while waiting for the drug dog to arrive violated internal regulations of the Arizona Department of Public Safety are irrelevant to the qualified immunity analysis, the relevant issue is whether the plaintiff has sufficiently pleaded that his continued detention to facilitate a dog sniff violated the Fourth Amendment, and the Court believes that he has as to Plumb. See Rodriguez v. United States, __ U.S. __, 135 S.Ct 1609 (2015) (Court held that prolonging a police stop exceeding the time needed to handle the matter for which the traffic stop was made in order to conduct a dog sniff violates the Constitution's shield against unreasonable seizures unless the

additional time is supported by independent reasonable suspicion of wrongdoing.)

The Court cannot reach the same conclusion as to Hancock because the plaintiff's response in effect focuses solely on his argument that Plumb is not entitled to qualified immunity; Hancock is never so much as mentioned by name in the response, nor do the factual allegations of the complaint sufficiently show that Hancock, who presumably brought the dog to the scene after the alleged 17 minute delay following Plumb's traffic stop of the plaintiff, violated any of the plaintiff's constitutional rights. All the complaint cursorily alleges as to Hancock is that he and Plumb searched the plaintiff's car after the dog alerted on something and, after finding nothing illegal, sent the plaintiff on his way. The complaint alleges no facts showing any involvement by Hancock in the decision to stop the plaintiff or to detain him pending the arrival of the dog, nor any facts showing how long Hancock detained the plaintiff after he arrived on the scene. The Court concludes that the Hancock is entitled to qualified immunity because the first prong of the test, the showing of a violation of a constitutional right, has not been met as to him.

2. Clearly established law

Because the plaintiff has pleaded a constitutional violation as to Plumb, whether Plumb is entitled to qualified immunity depends on whether the constitutional right that the plaintiff asserts was violated by Plumb was "clearly established" at the time of the alleged misconduct. Garcia v. County of Riverside, __ F.3d __, 2016WL1392326, at *7 (9th Cir. April 8, 2016). The plaintiff bears the burden of proof that the right allegedly violated was clearly established as of July 27, 2014, the date of the traffic stop. Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014). In order for a right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that his actions violated that right. *Id.*

The gist of the plaintiff's argument is that "[i]t was clearly established at the time of the stop that a traffic stop becomes an unreasonable seizure if the stop is prolonged for a purpose unrelated to the purpose of the stop, or longer than necessary to complete the traffic stop." While this contention is correct as a broad general proposition, that is not sufficient for qualified immunity purposes inasmuch as the Supreme Court has often emphasized that the inquiry into whether the unlawfulness of the official's conduct was clearly established at that time "must be undertaken in light of the specific context of the case, not as a general proposition." Brosseau v. Haugen, 543 U.S. at 198; *see also*, Plumhoff v. Rickard, __ U.S. __, 134 S.Ct 2012, 2023 (2014) (Supreme Court stated that it has "repeatedly told courts ... not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.") (internal citation omitted). The Court's inquiry must be whether at the time of the traffic stop the law clearly established that Plumb's conduct violated the plaintiff's Fourth Amendment right in the particularized sense of continuing the plaintiff's traffic stop for the length of time it took for the drug dog to arrive, for the dog to conduct a sniff of his car, and for defendants to then search his car. Although existing precedent as to this issue need not be a case directly on point, especially in this Fourth Amendment context, that precedent "must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. at 2083; *see also*, Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in light of pre-existing law the unlawfulness must be apparent.") The Court's inquiry is ended if the decisional authority of the Supreme Court or the Ninth Circuit then clearly established the right

at issue, but in the absence of such authority, the Court may look to whatever decisional law is available, including decisions of other circuits. Tarabochia v. Adkins, 766 F.3d at 1125.

Notwithstanding the many cases giving shape to the contours of when a Terry stop becomes an unlawful seizure in violation of the Fourth Amendment, given the Supreme Court's "demanding standard" for disallowing qualified immunity, Thomas v. Dillard, ___ F.3d ___, 2016WL1319765, at *15 (9th Cir. April 5, 2016), the Court cannot conclude that the plaintiff has met his burden of showing that the constitutional issue here was "beyond debate" at the time of the traffic stop. Although the Supreme Court, pursuant to Rodriguez v. United States, has now clearly established that a traffic stop cannot be extended in order to conduct a dog sniff absent reasonable suspicion, the Supreme Court did not issue that decision until some nine months after the traffic stop of the plaintiff. As the Supreme Court noted in Rodriguez, it granted certiorari in that case "to resolve a division among lower courts on the question whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." 135 S.Ct. at 1614.

The plaintiff cites to some pre-Rodriguez Supreme Court cases related to Terry stops such as Illinois v. Caballes, 543 U.S. 405 (2005), to support his position, but the Court does not believe that any of them, singularly or collectively, are sufficient to definitely establish that Plumb reasonably should have understood that his extension of the traffic stop under the circumstances here was then unconstitutional. For example, in Caballes, the Supreme Court, while noting that a traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of the stop, held that a dog sniff conducted during the pendency of a lawful

traffic stop that lasted less than ten minutes was constitutional.[4]

The plaintiff's argument is not further supported by citation to any Ninth Circuit precedent related to traffic stops, or to any supporting decisions from other circuits. While it may be a close question, the Court concludes that the relevant law was not clearly established because there are decisions prior to July 2014from other circuits that lend support to the defendants' position that existing case law did not then make the particular right at issue here beyond debate given that there was no established *per se* rule as to how long a traffic stop could be constitutionally continued for purposes of a dog sniff. By way of brief example, the Eighth Circuit, in its decision in January 2014 in United States v. Rodriguez, 741 F.3d 905 (8th Cir. 2014), which is the decision that the Supreme Court vacated and remanded after the traffic stop at issue here, concluded that an officer who prolonged a traffic stop, that lasted a total of some 29 minutes overall, for seven or eight minutes after its completion in order to conduct a dog sniff did not violate the Fourth Amendment, and the Eighth Circuit, in United States v. Gregory, 302 F.3d 805 (8th Cir.2002), had previously concluded that a short detention for a dog sniff after the completion of a traffic stop did not violate the Fourth Amendment when just over twenty minutes elapsed from the beginning of the traffic stop to the completion of the dog sniff. Similarly, the Eleventh Circuit, in United States v. Moore, 570 Fed.Appx. 848 (11th Cir. 2014), had

---

[4] The Court notes that the resolution of the"clearly established" issue in Terry-stop situations often depends very much on the facts of the case. Here, the Court's resolution of the issue has been complicated by the plaintiff's failure to allege pertinent facts in his complaint. For example, although the plaintiff's asserts in his response that "[t]raffic stops for speeding do not take 17 minutes," the complaint does not allege facts pertaining to when the traffic stop was completed in relation to the dog sniff and vehicle search or how long the plaintiff was detained after the completion of the mission of the traffic stop.

concluded prior to the stop here that a traffic stop was reasonable in duration for Fourth Amendment purposes when the dog sniff occurred some twenty-four minutes after the traffic stop began. Therefore,

IT IS ORDERED that the defendants' Motion to Dismiss (Doc. 7) is granted and that this action is dismissed in its entirety. The Clerk of the Court shall enter judgment accordingly.

DATED this 25th day of April, 2016.

Paul G. Rosenblatt
United States District Judge